SUPREME COURT.   Dutchess General Term, May, 1861.   *Emott,*
*Brown* and *Scrugham*, Justices.

GEORGE W. LAMBERTSON, plaintiff in error, *v.* THE PEOPLE,
defendants in error.

Form of an indictment for the crime against nature.

The allegation that the defendant "had a venereal affair" is not indispensable in
an indictment for the crime against nature. The omission may be supplied
by an allegation of "carnal knowledge," or some other equivalent allegation.

In empanneling a jury for the trial of a felony, at the Oyer and Terminer in the
county of Kings, it is not erroneous for the court, after failing to get a jury
from the thirty-six jurors summoned for the first six days of the court, under
the special act of April 17, 1858, applicable to that county, to refuse to sum-
mon talesmen, and to proceed to complete the jury from the thirty-six jurors
summoned for the next six days of the court.

AN indictment for the crime against nature was found in the
Court of Sessions for Kings county, against George W. Lam-
bertson, in the following words:

*Kings County, ss:*

The jurors of the People of the State of New York, in and
for the body of the county of Kings, upon their oath present,
that George W. Lambertson, now or late of the city of Brook-
lyn, in the county of Kings aforesaid, on the fifteenth day of
January, in the year of our Lord one thousand eight hundred
and sixty, at the city and in the county of Kings aforesaid, in
and upon the body of Peter Cohen, in the peace of God and
of the said people, then and there being with force and arms,
did feloniously make an assault, and him, the said Peter Cohen,
then and there feloniously, wickedly, diabolically, and against
the order of nature, carnally knew, and then and there feloni-
ously, wickedly and diabolically, and against the order of
nature, with the said Peter Cohen, did commit and perpetrate
the detestable and abominable crime of buggery, against the
statute in such case made and provided, to the evil example
of all others in like case offending, and against the peace of
the People of the State of New York, and their dignity.

JOHN WINSLOW, *District Attorney.*

Lambertson *v.* The People.

The defendant pleaded not guilty, and the issue came on for trial in that court, on the 15th of February, 1860.

When the district attorney moved on the trial, the prisoner, by his counsel, asked that the panel of jurors be called, and it was done by the clerk, under the direction of the court. Only thirty-four jurors answered to their names, and the counsel for the prisoner then requested that the names of the full panel be put into the jury box. The court denied the application, and the prisoner's counsel excepted.

The clerk then proceeded to call the jury. After the panel of jurors was exhausted, no jury having been obtained, the counsel for the prisoner insisted that, as a matter of law, the residue of the said jury should be summoned, as talesmen, by the sheriff of the county. But the court decided that the first class of jurors having been exhausted, the names of the second class of jurors who were present, and had been summoned by the commissioner of jurors as required by the statute, should be put into the jury box, to which decision the prisoner's counsel excepted.

The counsel for the prisoner then requested that the panel of jurors for that term of the court, be produced and read, which was done, when the counsel for the prisoner moved to set aside the panel by way of challenge, upon the following grounds:

1. That it did not appear by the proof of service that the jurors were notified by the commissioner, on at least three days' previous notice.

2. That the numbers opposite the names of the jurors, were not in conformity to the statute.

The court denied the motion, to which decision the prisoner's counsel excepted.

The court then directed the clerk to deposit the names of the second class of jurors in the jury box, and the clerk drew enough additional jurors to complete the jury.

The prisoner's counsel then moved the court to confine the testimony on the part of the prosecution, to a simple assault and battery, on the ground that the indictment was defective

in not describing the offense with more particularity. The motion was denied, and the prisoner's counsel excepted.

After hearing the evidence, the jury found a verdict of guilty:

The prisoner's counsel then moved in arrest of judgment on the grounds that the indictment was defective, because it did not state, with particularity, the place where the offense was committed; because it joined a misdemeanor and a felony in one count; because it did not describe the offense with precision, and because it did not state that the prisoner had a "venereal affair" with Peter Cohen, and because the crime was not designated nor described on the face of the indictment in the words of the statute.

The motion in arrest of judgment was denied, and the court sentenced the prisoner to confinement in the State prison for nine years and six months.

A writ of error was then sued out in behalf of the prisoner, and the record was removed into this court.

*N. F. Waring,* for the prisoner.

I. The panel of jurors having been exhausted, the defendant was entitled to have talesmen summoned (3 *R. S.,* 5*th ed.,* 718, § 120, 121), and the act organizing the commissioners of jurors in Kings county, does not repeal this section of the act. (*Sess. L.* 1858, *ch.* 342, § 42, *&c.*)

The court erred in not setting aside the second panel, for the following reasons:

1. By section eighteen of the act of 1858, the commissioner and the judges must sign a certificate at the end of the list. In this case none was signed.

2. And the court had no right to put into the box the second class of jurors; the jurors' names being all drawn out of the box, the defendant was entitled to have talesmen summoned.

II. The court erred in not confining the testimony of the People to a simple assault and battery, for the reasons referred to on the motion in arrest of judgment.

III. The court erred in not arresting the judgment.

The form of the indictment is laid down in 2 *Chitty's Cr. L.*, 48, and the words, "had a venereal affair," are made part of the indictment, and this form was settled, says Chitty, on great advice. (*East P. Crown*, 480, *note A.*) When on a youth under age, it must be so stated in the indictment (see form referred to), and when upon a female, it must be so stated.

The indictment has the words, "*contra naturæ ordinem rem habuit veneream et carnaliter cognovit,*" and Justice FOSTER says this alone was never thought sufficient. (2 *Foster*, 424.)

*John Winslow* (District Attorney), for the respondent.

I. The allegations of the indictment are sufficient. The expression "*venereal affair,*" adds nothing to the force of the indictment.

The words "*carnal knowledge,*" "*carnaliter cognovit,*" are essential, and include the meaning of "*venereal affair,*" and more. There could be no carnal knowledge which did not include "a venereal affair;" but the latter does not necessarily include the former.

It is said in Foster (*Crown Law*, 4231, 4 *Appendix*), that the word "*buggery*" must be used to describe the offense. The indictment conforms to this rule.

II. The omission of the expression, "*venereal affair,*" could not, in any sense, tend to the prejudice of the defendant. He could not be prejudiced, for the indictment informed him as to the offense for which he would be tried. (*See statute of Jeofails, R. S., part 4, ch. 2, title 4, § 52; 3 R. S., 5th ed., 1019, § 54.*)

III. The proceedings of the court in organizing the jury, were correct. It was the duty of the court to draw from the second class, upon the exhaustion of the first, rather than to resort to talesmen.

It is the spirit and purpose of the Kings County Jury Act (*Session Laws*, 1858), to discourage and prevent a resort to talesmen, when regularly drawn jurors are in court ready for service, as they were in this case.

IV. The objection that the jurors had not received three days' notice, could only be taken by a juror. The provision is for the benefit and protection of the jury. If a juror appears for service in court upon a shorter notice, he may serve.

*By the Court*, SCRUGHAM, J. There are certain technical words essential to the statement of some offenses in an indictment, and the omission of which would be fatal before or after verdict; as in murder, the word murdered; in rape, the word ravished; and in larceny, "feloniously took and carried away." These are spoken of by Blackstone (4 *Bl. Com.*, 307), as "particular words of art which are so appropriated by the law to express the precise idea which it entertains of the offense, that no other words, however synonymous they may seem, are capable of doing it."

The words usual in indictments for the offense of which the defendant was convicted, and which were omitted in this case, are not words of this character, and the indictment contains all of the words of art required.

Neither is the use of the omitted words essential to make the statement of the offense certain to a certain intent in general, which is all that is required in such pleadings (*Co. Lit.*, 303, *a*), for all that the pleader should have stated in charging the offense, is expressly alleged or by necessary implication included in what is alleged in the indictment in question, and therefore nothing can be presumed against him by reason of the omission of these words.

The trial of the defendant took place at the term of the Court of Sessions of Kings county, appointed to be held on the first Tuesday of February, 1860, under the act in relation to jurors, and to the appointment and the duties of a commissioner of jurors, in the county of Kings, passed April 17, 1858. One hundred and forty-four jurors had been drawn to serve at that term of the court, and pursuant to section twenty-three of that act the thirty-six jurors first drawn had been notified to be present on the first six days of said term, and

the thirty-six jurors next drawn had been notified to be pres-ent on the second six days of said term.

In empanneling a jury for the trial of this indictment, the names of all of the jurors in attendance, who had been noti-fied to attend for the first six days of the term, were exhausted before a full jury could be obtained, and the court directed that the panel should be completed by putting in the box the names of the jurors who had been notified to attend for the second week of the term, and who were present.

It is now urged that this was error, and that the court should have directed the sheriff to summon talesmen.

Trials of fact by jury, in every court of common law juris-diction, must be had by jurors drawn, summoned and returned in the manner directed by statute (in the county of Kings in the manner specially directed in the act referred to), provided a sufficient number of such jurors can be obtained.

It is the object of the law to secure, in all cases, persons to serve as jurors who possess all the qualifications of condition and character specified in the statutes regulating the manner in which jurors are to be selected and returned, and of these qualifications in respect to the persons returned, the town or ward officers who are charged with the duty, and to whom such persons are likely to be personally known, can more deliberately, and doubtless more correctly judge, than can the sheriff, in respect to talesmen, whom he must summon in haste from bystanders or others, with whom in many instances he is not acquainted, and of whose qualifications he will be too apt to judge by personal appearances, and from only such inform-ation as he may in his haste find it convenient to obtain.

From these considerations, and because the practice admits of great abuse, and renders it comparatively easy for interested and unscrupulous persons to get upon juries, the necessity for summoning talesmen is always to be avoided if possible.

This necessity only arises when a sufficient number of jurors duly drawn and summoned do not appear and cannot be obtained, and it certainly did not exist in this case, for the jurors who were notified to appear for the second six days

were jurors duly drawn, and summoned to attend that term of the court, and they did appear and were obtained.

It is true that, under their notice, they were not obliged to appear until the second week of the term, but this division of the jurors is intended only for the convenience of themselves and of the court. They are jurors, not of the week but of the term; and this is shown, not only by their being drawn as such, but also by the provision in § 23 of the act for allowing their days of service to be changed.

The judgment should be affirmed.

---

SUPREME COURT.    Broome General Term, May, 1862.    *Balcom*, *Campbell*, *Parker* and *Mason*, Justices.